**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

CASE NO.:

DRIVEN, P.S.C., as the Liquidation Receiver for
NODUS INTERNATIONAL BANK, INC.,

       Plaintiff,

v.

TOMAS NIEMBRO CONCHA;
MORELLA RINCON DE NIEMBRO;
JUAN FRANCISCO RAMIREZ;
MARIA GABRIELA VASQUEZ DE RAMIREZ;
NODUS FINANCE, LLC;
OCEANA KEY BISCAYNE CORPORATION;
and JOSE G. SUAREZ;

       Defendants.

_____/

## COMPLAINT

Plaintiff, Driven, P.S.C., as the duly-appointed Receiver for the liquidation of Nodus International Bank, Inc., sues Defendants, Tomas Niembro Concha, Morella Rincon de Niembro, Juan Francisco Ramirez, Maria Gabriela Vasquez de Ramirez, Oceana Key Biscayne Corporation, Nodus Finance, LLC, and Jose G. Suarez, and alleges:

## INTRODUCTION

1.      This is a case against Tomas Niembro Concha ("Niembro") and Juan Francisco Ramirez ("Ramirez"), former officers and directors of Nodus International Bank, Inc. ("Nodus"), as well as their co-conspirators and their related companies, based on breaches of fiduciary duty, conversion, constructive fraud, and other wrongful conduct as further alleged herein.

2.     Nodus is a Puerto Rico-based International Banking Entity ("IBE") organized under a license issued pursuant to Section 7 of the International Banking Center Regulatory Act, Act No. 52, dated August 11, 1989.

3.     Nodus was jointly owned by Mr. Niembro and Mr. Ramirez. They treated depositor funds at Nodus as their own personal piggy bank by engaging in a series of self-dealing transactions to enrich themselves at the expense of Nodus' depositors. In total, Mr. Niembro's and Mr. Ramirez's various schemes have caused Nodus to lose approximately $92 million in depositor funds.

4.     The subject of this Complaint concerns approximately $28.4 million of those losses, based on two conspiracies that Mr. Niembro and Mr. Ramirez hatched and conducted from Miami, Florida. Those schemes will be referred to herein as the "Our Microlending Scheme" and the "Nodus Finance Scheme."

5.     The Our Microlending Scheme worked like this: Mr. Niembro and Mr. Ramirez wished to use depositor funds to grant themselves millions of dollars in personal loans that they collateralized using the depositors' funds. To cover their tracks, they turned to a Miami-based company called Our Microlending, LLC, which agreed, for a fee, to accept millions of dollars in depositor funds from Nodus in the form of investment certificates – which were collateralized via investment certificates that were funded by the depositors' funds – and then turn those depositor funds into personal loans to Mr. Niembro, Mr. Ramirez, and their families. Mr. Niembro and Mr. Ramirez concealed the scheme by causing the "investment certificates" from Our Microlending to appear on Nodus' books as assets. Meanwhile, the Niembro and Ramirez families used those loans for their own benefit. The result has been a net loss of at approximately $2.7 million to Nodus depositors, excluding costs, interest, and attorney's fees.

2

6.      The Nodus Finance Scheme worked as follows: At a time when they knew that Nodus was being placed in liquidation but before the liquidation plan could be carried out, Mr. Ramirez and Mr. Niembro caused Nodus to purchase a portfolio of uncollateralized loans from their Miami-based company, Defendant Nodus Finance, LLC, for approximately $26 million. As compensation to Nodus Finance, Niembro and Ramirez caused Nodus to forgo the collection of approximately $25.7 million owed to it by Nodus Finance as the result of a prior sale of 47 promissory notes to Nodus.

7.      After catching wind of Defendants' various schemes, the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico ("OCIF") invoked its power arising under 7 L.P.R.A. § 232a to: i) remove Mr. Niembro and Mr. Ramirez from Nodus, ii) appoint Driven as Receiver, and iii) order the liquidation of Nodus.

8.      Under the powers granted to it by OCIF, Driven brings this action to obtain remedies for the harm caused to Nodus and its depositors.

## PARTIES AND RELEVANT NON-PARTIES

### A.      PLAINTIFF

9.      Plaintiff, Driven, is a Puerto Rico Professional Services Corporation comprised of more than 170 professionals, including, but not limited to Certified Public Accountants, Certified Valuation Analysts, Certified Fraud Examiners, and attorneys. It is headquartered in Puerto Rico. The OCIF appointed Driven as the liquidation Receiver for Nodus on or about October 3, 2023.

10.     Nodus is a Puerto Rico IBE with its headquarters in San Juan, Puerto Rico. It was, at all times relevant hereto, owned by Mr. Niembro and Mr. Ramirez before being placed into receivership and having its license revoked by the OCIF.

### B.   DEFENDANTS

11.     Defendant Tomas Niembro owned 60% of Nodus and served as its President at all times relevant hereto. Mr. Niembro is a Venezuelan national who, on information and belief, currently resides in Spain. Mr. Niembro beneficially owns one or more residences in Florida, including a condominium Ocean Tower Two, 791 Crandon Blvd., Apt 1408, Key Biscayne, Florida 33149.

12.     Defendant Morella Rincon de Niembro ("Morella" or "Ms. Niembro") is Mr. Niembro's wife. She conspired with her husband to siphon depositor funds from Nodus for personal use. Ms. Niembro is a Venezuelan national who, on information and belief, currently resides with her husband in Spain. She shares beneficial ownership with her husband of one or more residences in Florida, including a condominium Ocean Tower Two, 791 Crandon Blvd., Apt 1408, Key Biscayne, Florida 33149.

13.     Defendant Juan Ramirez owned 40% of Nodus and served as the Chairman of its Board of Directors at all times relevant hereto. Mr. Ramirez's last known residence is 3525 Royal Palm Avenue, Miami, Florida 33133.

14.     Defendant Maria Gabriela Vasquez de Ramirez ("Maria" or "Ms. Ramirez") is Mr. Ramirez's spouse. She conspired with her husband to siphon depositor funds from Nodus for personal use. Ms. Ramirez's last known residence is 3525 Royal Palm Avenue, Miami, Florida 33133.

15.     Defendant Nodus Finance is a Florida limited liability company with its principal business address at 1200 Brickell Ave., Suite 425, Miami, Florida 33131. Mr. Niembro is its registered agent for service of process at that same address. Mr. Niembro and Mr. Ramirez beneficially own Nodus Finance via Nodus Financial Holding, Inc. ("Nodus Holding"), a Florida

corporation with its principal place of business at the same address as Nodus Finance. Mr. Niembro is also Nodus Holding's registered agent for service of process at that same address.

16.     Defendant Jose G. Suarez was, at all times relevant hereto, the General Manager of Nodus Finance. He resides at 7761 NW 114th Place, Doral, Florida 33178.

17.     Defendant Oceana Key Biscayne Corporation ("Oceana") is a currently-dissolved Florida for profit corporation with its principal address at 1000 Brickell Ave., Suite 112, Miami, Florida 33131. Oceana was, at all times relevant hereto, owned by Tomas and Morella Niembro, and was used as the conduit for certain ill-gotten funds, as further alleged herein.

C.     **NON-PARTY CO-CONSPIRATOR**

18.     Our Microlending was the intermediary that, for a fee, was willing to launder Nodus depositor funds into loans for Mr. Niembro, Mr. Ramirez, and their families. It is a Florida Limited Liability Company headquartered in Miami, Florida.

## JURISDICTION AND VENUE

19.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorney's fees, and because the Parties are completely diverse.

20.     The Court has personal jurisdiction over Tomas Niembro pursuant to § 48.193, Florida Statutes, because, at all times relevant and as further alleged herein, he has: (1) operated, conducted, engaged in, or carried out business in this state or have an office or agency in this State; (2) committed tortious acts within this State and/or conspired with others to commit tortious acts in this State, as further alleged herein; (3) beneficially owned, used, and/or possessed certain real

property in this State; and/or, without limitation, (4) engaged in substantial and not isolated activity in this State.

21.     The Court has personal jurisdiction over Morella Niembro pursuant to § 48.193, Florida Statutes, because, at all times relevant and as further alleged herein, she has: (1) operated, conducted, engaged in, or carried out business in this state or have an office or agency in this State; (2) committed tortious acts within this State and/or conspired with others to commit tortious acts in this State, as further alleged herein; (3) beneficially owned, used, and/or possessed certain real property in this State; and/or, without limitation, (4) engaged in substantial and not isolated activity in this State.

22.     In addition, or in the alternative, the Court has *quasi in rem* jurisdiction over Tomas and Morella Niembro due to their beneficial ownership of certain real property located at 791 Crandon Boulevard, Apartment 1408, Key Biscayne Florida 33149 (the "Property"), which the Niembros hold via a Florida limited liability company, Ocean Tower Two 1408, LLC. The Niembros have recently attempted to sell the Property for an asking price of $10.5 million. Plaintiff seeks a writ of attachment against the Property to secure a judgment against Defendants, as it is believed that Defendants have removed other proceeds of their fraudulent schemes from Florida.

23.     The Court has personal jurisdiction over Juan and Maria Ramirez because they reside in Florida, and/or are engaged in substantial and not isolated activity in this State. To any extent that they do not reside in Florida, then the Court has long-arm jurisdiction over them pursuant to § 48.193, Florida Statutes, because, at all times relevant and as further alleged herein, they have: (1) operated, conducted, engaged in, or carried out business in this state or have an office or agency in this State; (2) committed tortious acts within this State and/or conspired with

others to commit tortious acts in this state, as further alleged herein; and/or, without limitation, (3) beneficially own, use, and/or possess certain real property in this State.

24.     The Court has personal jurisdiction over Nodus Finance, LLC and Oceana because they are both Florida business entities with their principal places of business in Florida, and over Jose G. Suarez because he resides in Florida.

25.     The exercise of personal jurisdiction over the non-resident Defendants comports with the Due Process Clause of the 14th Amendment to the Constitution of the United States, because all have engaged in deliberate contacts with the State of Florida, such that they could reasonably expect to be haled into a Florida court.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Miami-Dade County was the locus of the actions alleged herein, where the causes of action accrued, and/or where most Defendants reside or have their principal places of business.

## GENERAL ALLEGATIONS

27.     Nodus was founded and was issued a license in 2009 to operate as a Puerto Rico IBE. Nodus commenced operations in 2010. Nodus was formed by Optivalores Investment Company, Ltd, which owned 100% of its shares. On information and belief, Niembro and Ramirez held beneficiary interests in Optivalores at that time.

28.     OCIF conducted a series of examinations of Nodus, beginning on February 15, 2012. OCIF found that Nodus's financial condition was less than satisfactory, and that its financial condition continued to deteriorate over the course of subsequent examinations. OCIF also found violations of Bank Secrecy Act and Anti-Money Laundering regulations. OCIF issued a series of regulatory directives to Nodus and its Board of Directors to correct these deficiencies, but to no avail.

29.     On May 2, 2017, OCIF authorized a change of control whereby ownership of Nodus was transferred to two corporations, one of which was controlled by Mr. Niembro with the other controlled by Mr. Ramirez.

30.     OCIF conducted a fourth examination of Nodus on October 16, 2017, finding serious financial and managerial deficiencies. OCIF urged the Nodus Board of Directors, which was now under the administration of Mr. Niembro and Mr. Ramirez, to address a number of issues.

31.     Mr. Niembro was appointed as President of Nodus on June 1, 2018. On August 5, 2019, OCIF ratified the appointment of Mr. Niembro as President and Mr. Ramirez as Chairman of the Board.

32.     On November 12, 2019, the OCIF authorized the transfer of Nodus shares from Veninvest and Canoma to Mr. Niembro and Mr. Ramirez in their personal capacity. As a result, Nodus changed from an IBE whose shareholders and owners were legal entities to one owned directly by Mr. Niembro and Mr. Ramirez.

33.     At all times relevant hereto, Mr. Niembro and Mr. Ramirez controlled Nodus from the offices of Nodus Finance, in Miami, Florida.

34.     On January 18, 2022, the fifth and final examination of Nodus resulted in the lowest and most critical rating possible. OCIF issued further regulatory directives to Nodus, but Nodus did not comply with those directives.

35.     OCIF received multiple claims from depositors related to Nodus's refusal to complete fund transfers requested by them in amounts totaling millions of dollars. This led OCIF to present Nodus with alternatives for voluntary liquidation in March 2023.

36.     On May 5 and 8, 2023, OCIF, Nodus, and Niembro and Ramirez signed a Plan of Voluntary Liquidation and Dissolution of Nodus, which was amended on August 3, 2023. The

Liquidation Plan and Amendment required Nodus to limit its business activities to winding up its business and affairs, marshal and preserve the value of assets, and distribute assets in accordance with the Plan's provisions. The Plan also prohibited the distribution of Nodus's assets to Shareholders until all obligations were fulfilled.

37.     Plaintiff, Driven, was officially designated as the Plan Administrator on June 5, 2023. Driven proceeded to investigate the maze of transactions undertaken by Nodus while it was under the direction of Mr. Niembro and Mr. Ramirez, discovering losses on the order of tens of millions of dollars that appeared to be unrecoverable. In response to this alarming state of affairs, as well as multiple misrepresentations by Mr. Niembro and Mr. Ramirez, on October 3, 2023, OCIF issued a Complaint and Provision and Permanent Order for the Appointment of a Receiver and Revocation of License against Nodus.

38.     Through the Receivership Order, OCIF appointed Plaintiff, Driven, as independent Receiver, replacing Nodus's management, directors, and Board of Directors with Driven. To this end, OCIF authorized Driven to take possession and control of all the assets and liabilities of Nodus to complete the liquidation process.

39.     By resolution on October 16, 2023, OCIF revoked Nodus's license; confirmed the Receivership Order appointing Driven as Receiver, making the appointment permanent until liquidation is complete. Niembro and Ramirez accepted the appointment of Driven as Receiver.

40.     To date, Driven has ascertained that Nodus owes depositors approximately $92 million, and that more than ninety-five percent of Nodus's loan portfolio is uncollateralized.

41.     On April 4, 2024, OCFI filed an administrative complaint against Nodus to pierce the corporate veil against its shareholders, *Office of the Commissioner of Financial Institutions v. Nodus Int'l Bank, Inc., Tomas Niembro Concha, and Juan Ramirez*, Case No. C-24-D-003 (April

2024) (the "Administrative Complaint"). The Administrative Complaint requested the piercing of Plaintiff's corporate veil, holding Mr. Niembro and Mr. Ramirez jointly and severally liable as shareholders for engaging in a series of fraudulent acts and causing the insolvency of Nodus, to the detriment of the interests of its depositors and creditors.

### A.    THE OUR MICROLENDING SCHEME

42.    Among many wrongful and fraudulent acts committed to the detriment of Nodus's depositors, Driven discovered that Mr. Niembro and Mr. Ramirez had conspired with the co-Defendants and with non-party Our Microlending LLC, a Florida limited liability company, to defraud Nodus for their personal benefit.

43.    Our Microlending is a microfinance company involved in the business of lending small amounts to start-ups, small businesses and entrepreneurs, in Miami-Dade, Broward, and Palm Beach counties. The average loan from Our Microlending is approximately $14 thousand, with a current borrower base of around 500 individuals.

44.    To fund its operations, Our Microlending raises capital in several ways, one of which is the issuance of Investment Certificates. An Investment Certificate is similar to a certificate of deposit, with certain terms and conditions for the return of the investor's funds, with interest.

45.    Although an Investment Certificate might be a legitimate method for raising capital, Niembro and Ramirez used the instrument to defraud Nodus and its depositors and for their personal benefit.

46.    Specifically, on March 18, 2022, Niembro and Ramirez met with Our Microlending in Miami, Florida and all three agreed to a transaction totaling approximately $7 million, by which Our Microlending would issue investment certificates to Nodus while allowing Niembro and Ramirez to use the funds for their own personal benefit.

47.     On April 11, 2022, Niembro and Ramirez, acting as directors of Nodus and with the other members of the Board, approved an investment of $7 million in certificates of investment, to be held by Our Microlending for 1 year and with an annal interest rate of 5.05%.

48.     On that same day, Nodus wired $7 million to Our Microlending.

49.     On April 11, 2022, Our Microlending issued two Investment Certificates to Nodus: Investment Certificate No. 4C1222040001-0 for $4 million and Investment Certificate No. 4C1222040002-0 for $3 million. *See* Investment Certificates, attached as Composite Exhibit "A."[1]

50.     Niembro and Ramirez caused Nodus to book the Investment Certificates as assets of Nodus. However, the Investment Certificates in fact were a sham to conceal illegal personal loans to Niembro, Ramirez, and their wives, using depositor funds as collateral and without seeking permission from OCIF.

51.     The day after Our Microlending received the funds, Tomas and Morella Niembro "borrowed" $3,685,760.00 from Our Microlending via a commercial promissory note. Tomas and Morella Niembro signed the promissory note on their own behalf and as officers of Oceana Key Biscayne Corp. ("Oceana") – the latter a Florida corporation that, as of the time of this transaction, had been voluntarily dissolved.  *See* Niembro Promissory Note dated April 12, 2022, attached hereto as Exhibit "B."

52.     At the time that she signed the promissory note, Morella Niembro knew or had reason to know that the proceeds of this loan were Nodus depositor funds and that she and her husband, Tomas Niembro, had no right to use those funds for their own benefit.

---

[1]     Our Microlending issued subsequent Investment Certificates to Nodus in 2023 and 2024. Driven is still investigating whether the subsequent Investment Certificates related to additional funds transfers or were used to paper the fraud being perpetrated by Niembro and Ramirez in relation to the original transfer of $7 million.

53.     Pursuant to the Niembros' instructions, Our Microlending sent the loan monies to a CitiBank account held by Oceana. *See* Oceana Wire Instructions, attached as Exhibit "C."

54.     To secure this loan, Tomas Niembro, as CEO of Nodus, granted Our Microlending a first priority security interest in the form of a "Pledge" of the $4 million in depositor funds that were deposited with Our Microlending under Investment Certificate No. 4C1222040001-0. *See* Niembro Pledge, attached as Exhibit "D."

55.     That same day, Juan Ramirez, his wife, Maria, and Our Microlending signed another commercial promissory note, this one in the amount of $2,714,240.00. *See* Ramirez Promissory Note dated April 12, 2022, attached hereto as Exhibit "E."

56.     At the time that she signed the promissory note, Maria Ramirez knew or had reason to know that that the proceeds of this loan were Nodus depositor funds and that she and her husband, Juan Ramirez, had no right to use those funds for their own benefit.

57.     Pursuant to the Ramirezes' instructions, Our Microlending sent those funds to their personal account in Miami. *See* Ramirez Wire Instructions, attached hereto as Exhibit "F."

58.     To secure this loan, Ramirez, as Chairman of Nodus, granted Microlending a first priority security interest in the form of a "Pledge" of the $3 million in depositor funds that were deposited with Our Microlending under Investment Certificate No. 4C1222040002-0. *See* Ramirez Pledge, attached as Exhibit "G."

59.     The "loans" were partially repaid. However, as of the date hereof $2,338,909.10 remains outstanding for the Ramirezes' loan and $341,090.90 remains outstanding for the Niembros' loan. *See* Account Statements, attached hereto as Composite Exhibit H. As a consequence, Nodus has not been fully repaid by Our Microlending for the Investment Certificates, to the detriment of Nodus and its depositors.

**B.      The Nodus Finance Scheme**

60.      Between September 19, 2019 and September 29, 2021, without the authorization of OCIF and without conducting a repayment analysis, Niembro and Ramirez caused Nodus to purchase 47 promissory notes from Nodus Finance in the amount of approximately $25.3 million.

61.      The OCIF found that this transaction violated Puerto Rico laws and regulations, as it constituted financing to shareholders, which is totally prohibited, and since it was an investment in securities or shares of an affiliated institution representing more than 25% of Nodus's net capital, without prior notice or approval from OCIF.

62.      As a result of these transactions, Nodus Finance became a debtor to Nodus for approximately $25.3 million, without any collateral or guarantee.

63.      On April 28, 2023, without prior authorization from OCIF and knowing that the liquidation process was imminent, Niembro and Ramirez caused Nodus to sign an agreement with Nodus Finance by which Nodus purchased a mortgage loan portfolio from Nodus Finance that was purportedly worth $26,011,780.08. *See* Mortgage Loan Purchase and Servicing Agreement, attached as Exhibit "I."  The Loan Purchase Agreement was signed on behalf of Nodus Finance by Defendant Jose G. Suarez.

64.      The Loan Purchase Agreement contained numerous representations from Nodus Finance regarding the viability of the loans, but those representations turned out to be false, as the loans were non-performing and mostly unsecured. As well, Niembro, Ramirez, and Jose G. Suarez knew that at least nearly $8 million of this loan portfolio was uncollectable.

65.      Although the Loan Purchase Agreement stated that Nodus would pay $26,011,780.08 to Nodus Finance, Nodus's financial statements reflect that it accepted Nodus

Finance's loan portfolio as partial payment of the latter's debt to Nodus arising from the 47 promissory notes acquired between 2019 and 2021.

66.   By carrying out this transaction during discussions leading up to the implementation of the Liquidation Plan, Niembro, Ramirez, and Jose G. Suarez caused Nodus's promissory notes assets to decrease by $25,738,875.65. This freed Nodus Finance and its owners from a liquid debt to Nodus while simultaneously increasing Nodus Finance's deposit account at Nodus by $272,904.43, all to the detriment of Nodus's depositors. *See* Transaction Balance Sheet, attached hereto as Exhibit "J".

67.   Plaintiff has engaged the undersigned law firm to claw back depositor assets that Niembro and Ramirez took from Nodus through the acts of self-dealing described here, and to pay it a fee.

68.   All conditions precedent to bringing this action have been performed, excused, and/or waived.

## COUNT I
### Breach of the Fiduciary Duty of Loyalty in Relation to the Our Microlending Scheme
### (Tomas Niembro Concha and Juan Francisco Ramirez)

69.    Plaintiff realleges paragraphs 1 through 59 and 67 through 68 as if fully incorporated herein, and further alleges:

70.   Defendants Tomas Niembro and Juan Ramirez owed, as officers and directors of Nodus, a fiduciary duty of loyalty to Nodus's depositors.

71.   With respect to the Our Microlending Scheme, Niembro and Ramirez breached their fiduciary duty of loyalty by:

    a.   engaging in self-dealing and conflict of interest transactions;

b. prioritizing their personal interests over those of Nodus's depositors to the depositors' detriment;

c. granting themselves loans and concealing those loans via Investment Certificates from Our Microlending;

d. pledging depositor funds as collateral for personal loans to them from Our Microlending; and, without limitation,

e. failing to repay funds that belonged to Nodus depositors.

72. As a result, Nodus and its depositors have been injured.

Wherefore Plaintiff, Driven, demands judgment jointly and severally against Defendants Tomas Niembro Concha and Juan Francisco Ramirez for an amount to be determined at trial, including but not limited to compensatory damages, punitive damages, as well as prejudgment interest and costs, and such further relief as the Court deems just and equitable.

### COUNT II
**Constructive Fraud in Relation to the Our Microlending Scheme**
**(Against Tomas Niembro Concha and Juan Francisco Ramirez)**

73. Plaintiff realleges paragraphs 1 through 59 and 67 through 72 as if fully incorporated herein, and further alleges:

74. As fiduciaries of Nodus's depositors, Niembro and Ramirez were in a relationship of trust or confidence to those depositors.

75. Niembro and Ramirez abused their position of trust and confidence by engaging in self-dealing, fraud, and conflict of interest transactions, prioritizing their personal interests over those of Nodus's depositors to those depositors' detriment, by granting themselves loans and concealing those loans via Investment Certificates from Our Microlending.

76. As a result, Nodus and its depositors have been injured.

Wherefore Plaintiff, Driven, demands judgment jointly and severally against Defendants Tomas Niembro Concha and Juan Francisco Ramirez for an amount to be determined at trial, including but not limited to compensatory damages, prejudgment interest and costs, and such further relief as the Court deems just and equitable.

**COUNT III**
**Conspiracy to Breach Fiduciary Duty in Relation to the Our Microlending Scheme**
**(Against Defendants Tomas Niembro Concha, Morella Rincon de Niembro, Juan Francisco Ramirez, and Maria Gabriela Vasquez de Ramirez)**

77.     Plaintiff realleges paragraphs 1 through 59 and 67 through 72 as if fully incorporated herein, and further alleges:

78.     Defendants Tomas and Morella Niembro and Juan and Maria Ramirez knew or had reason to know of the fiduciary duty of loyalty owed by Tomas Niembro and Juan Ramirez to Nodus's depositors.

79.     Tomas and Morella Niembro and Juan and Maria Ramirez entered into an agreement, among themselves and with non-party Our Microlending, to breach, or to assist in breaching, the fiduciary duty of loyalty owed to Nodus's depositors by Tomas Niembro and Juan Ramirez.

80.     Tomas and Morella Niembro and Juan and Maria Ramirez each undertook one or more overt acts in furtherance of the conspiracy, as further alleged herein.

81.     As a result of the conspiracy, Nodus and its depositors have been injured.

Wherefore Plaintiff, Driven, demands judgment jointly and severally against Defendants Tomas and Morella Niembro and Juan and Maria Ramirez for an amount to be determined at trial, including but not limited to compensatory damages, punitive damages, as well as prejudgment interest and costs, and such further relief as the Court deems just and equitable.

**COUNT IV**
**Breach of Fiduciary Duty of Loyalty in Relation to the Nodus Finance Scheme**
**(Against Tomas Niembro Concha and Juan Francisco Ramirez)**

82.     Plaintiff realleges paragraphs 1 through 41 and 60 through 68 as if fully incorporated herein, and further alleges:

83.     Tomas Niembro and Juan Ramirez owed, as officers and directors of Nodus, a fiduciary duty of loyalty to Nodus's depositors.

84.     Niembro and Ramirez breached their fiduciary duty of loyalty in relation to the Nodus Finance Scheme by:

     a.   engaging in self-dealing and conflict of interest transactions;

     b.   prioritizing their personal interests over those of Nodus and its depositors, to their detriment;

     c.   fraudulently causing Nodus Finance to sell, and for Nodus to purchase, a portfolio of worthless loans in the amount of approximately $26 million in order to enrich themselves; and, without limitation,

     d.   concealing their self-dealing and fraud from regulatory authorities.

85.     As a result, Nodus and its depositors have been injured.

Wherefore Plaintiff, Driven, demands judgment jointly and severally against Defendants Tomas Niembro and Juan Ramirez for an amount to be determined at trial, including but not limited to compensatory damages, punitive damages, prejudgment interest and costs, and such further relief as the Court deems just and equitable.

17

**COUNT V**
**Constructive Fraud in Relation to the Nodus Finance Scheme**
**(Against Tomas Niembro and Juan Ramirez)**

86.     Plaintiff realleges paragraphs 1 through 41, 60 through 68, and 82 through 85 as if fully alleged herein, and further alleges:

87.     As fiduciaries of Nodus's depositors, Tomas Niembro and Juan Ramirez were in a relationship of trust or confidence to those depositors.

88.     Niembro and Ramirez abused their position of trust and confidence in relation to the Nodus Finance Scheme by engaging in self-dealing, fraud, and conflict of interest transactions, prioritizing their personal interests over those of Nodus's depositors to those depositors' detriment, and by causing Nodus to purchase a fraudulent loan portfolio from Nodus Finance, which caused a loss to Nodus and its depositors of approximately $25 million.

89.     As a result, Nodus and its depositors have been injured.

Wherefore Plaintiff, Driven, demands judgment jointly and severally against Defendants Tomas Niembro and Juan Ramirez for an amount to be determined at trial, including but not limited to compensatory damages, prejudgment interest and costs, and such further relief as the Court deems just and equitable.

**COUNT VI**
**Conspiracy to Breach the Fiduciary Duty of Loyalty in Relation to the Nodus Finance Scheme**
**(Against Tomas Niembro Concha, Juan Francisco Ramirez, and Jose G. Suarez)**

90.     Plaintiff realleges paragraphs 1 through 41, 60 through 68, and 82 through 85 as if fully alleged herein, and further alleges:

91.     Tomas Niembro, Juan Ramirez, and Jose G. Suarez knew or had reason to know of the fiduciary duty of loyalty owed by Tomas Niembro and Juan Ramirez to Nodus's depositors.

92.     Tomas Niembro, Juan Ramirez, and Jose G. Suarez entered into an agreement among themselves, to breach, or to assist in breaching, the fiduciary duty of loyalty owed to Nodus's depositors by Tomas Niembro and Juan Ramirez in relation to the fraudulent sale of the $26 million loan portfolio by Nodus Finance to Nodus.

93.     Tomas Niembro, Juan Ramirez, and Jose G. Suarez each undertook one or more overt acts in furtherance of the conspiracy, as further alleged herein.

94.     As a result of the conspiracy, Nodus and its depositors have been injured.

Wherefore Plaintiff, Driven, demands judgment jointly and severally against Defendants Tomas Niembro, Juan Ramirez, and Jose G. Suarez for an amount to be determined at trial, including but not limited to compensatory damages, punitive damages, as well as prejudgment interest and costs, and such further relief as the Court deems just and equitable.

### COUNT VII
### Conversion in Relation to the Our Microlending Scheme
### (Against Tomas Niembro Concha, Morella Ricon de Niembro, Juan Francisco Ramirez, Maria Gabriela Vasquez de Ramirez, and Oceana Key Biscayne Corporation)

95.     Plaintiff realleges paragraphs 1 through 59 and 67 through 68, as if fully incorporated herein, and further alleges:

96.     Nodus's depositors had a right to possess the funds that they had on deposit with Nodus.

97.     Defendants Tomas and Morella Niembro, Juan and Maria Ramirez, and Oceana Key Biscayne Corporation took or used those funds in a way that was inconsistent with the depositors' rights.

98.     Nodus and its depositors have been injured as a result.

Wherefore Plaintiff, Driven, demands judgment jointly and severally against Defendants Tomas and Morella Niembro, Juan and Maria Ramirez, and Oceana Key Biscayne Corporation for

an amount to be determined at trial, including but not limited to compensatory damages as well as prejudgment interest and costs, and such further relief as the Court deems just and equitable.

### COUNT VIII
### Conversion in Relation to the Nodus Finance Scheme
### (Against Tomas Niembro Concha, Juan Francisco Ramirez, Jose G. Suarez, and Nodus Finance, LLC)

99.     Plaintiff realleges paragraphs 1 through 41 and 60 through 68 as if fully incorporated herein, and further alleges:

100.    Nodus's depositors had a right to possess the funds that they had on deposit with Nodus.

101.    Defendants Tomas Niembro, Juan Ramirez, Jose G. Suarez, and Nodus Finance, LLC took or used those funds in a way that was inconsistent with the depositors' rights.

102.    Nodus and its depositors have been injured as a result.

Wherefore Plaintiff, Driven, demands judgment jointly and severally against Defendants Tomas Niembro, Juan Ramirez, Jose G. Suarez, and Nodus Finance, LLC for an amount to be determined at trial, including but not limited to compensatory damages as well as prejudgment interest and costs, and such further relief as the Court deems just and equitable.

### JURY TRIAL DEMANDED

Plaintiff demands a jury trial for all matters so triable.

Dated:  February 6, 2025

Respectfully submitted,
DIAZ, REUS & TARG, LLP
100 Southeast Second Street, Suite 3400
Miami, Florida 33131
Telephone: (305) 375-9220
Facsimile: (305) 375-8050

By: */s/ Brant C. Hadaway*
Brant C. Hadaway (Florida Bar No. 494690 )
Email Address: bhadaway@diazreus.com
Marta Colomar Garcia (Florida Bar No. 40869)
Email Address: mcolomar@diazreus.com
Evan Stroman (Florida Bar No. 118929)
Email Address: estroman@diazreus.com

*Counsel for Plaintiff Driven, P.S.C. as the Liquidation Trustee for Nodus International Bank, Inc.*