UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO. 1:25-cv-20550-PCH

DRIVEN, P.S.C., as the Liquidation Receiver
for NODUS INTERNATIONAL BANK, INC.,

    Plaintiff,

v.

TOMAS NIEMBRO CONCHA; MORELLA
RINCON DE NIEMBRO; JUAN FRANCISCO
RAMIREZ; MARIA GABRIELA VASQUEZ
DE RAMIREZ; NODUS FINANCE, LLC;
OCEANA KEY BISCAYNE CORPORATION;
and JOSE G. SUAREZ,

    Defendants.
_____/

**TOMAS NIEMBRO CONCHA'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

    Driven, P.S.C. ("Driven") brings this action against Tomas Niembro Concha and others as liquidation receiver on behalf of Nodus International Bank, Inc. ("Nodus Bank") to recover funds that Mr. Niembro and the other defendants purportedly owe to Nodus Bank's depositors. The major flaw with Driven's complaint, and why it is due to be dismissed entirely, is that Driven brings claims that, at best, belong to Nodus Bank's depositors and for which Driven does not have standing. Further, each of Driven's counts against Mr. Niembro fail as a matter of law or for failure to state a claim upon which relief can be granted. Accordingly, Mr. Niembro moves to dismiss Driven's complaint under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

**I.   SUMMARY OF DRIVEN'S ALLEGATIONS AGAINST MR. NIEMBRO**

    Driven alleges that, as president and part owner of Nodus Bank, Mr. Niembro engaged in

two separate schemes that caused Nodus Bank's depositors to lose approximately $28.4 million. *See* D.E. 1 ¶¶ 4, 11, 31.[1]

Driven identifies the first alleged scheme as the "Our Microlending Scheme." *Id.* at 10. As part of the Our Microlending Scheme, Driven alleges that, "to the detriment of Nodus [Bank's] depositors," on March 18, 2022, Mr. Niembro agreed with non-party Our Microlending LLC to transfer $7 million from Nodus Bank to Our Microlending in exchange for Our Microlending issuing investment certificates to Nodus Bank while allowing Mr. Niembro to use the funds for his personal benefit. *Id.* ¶¶ 42, 46. Driven alleges that Mr. Niembro approved the transaction while acting as director of Nodus Bank. *Id.* ¶ 47. According to Driven, "[t]he day after Our Microlending received the funds, Tomas and Morella Niembro 'borrowed' $3,685,760.00 from Our Microlending via a commercial promissory note." *Id.* ¶ 51. Further, Driven alleges that "[t]o secure this loan, Tomas Niembro, as CEO of Nodus, granted Our Microlending a first priority security interest in the form of a 'Pledge' of the $4 million in depositor funds that were deposited with Our Microlending . . . ." *Id.* ¶ 54. Driven contends that, although the loan has been partially repaid, Mr. Niembro still owes $341,090.90 under this alleged scheme. D.E. 1 ¶ 59.

The second alleged scheme is the "Nodus Finance Scheme." *Id.* at 13. According to Driven, "[b]etween September 19, 2019 and September 29, 2021, without the authorization of" the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico ("OCIF"), "and without conducting a repayment analysis, Niembro [] [] caused Nodus [Bank] to purchase 47 promissory notes from Nodus Finance in the amount of approximately $25.3

---

[1] For purposes of his motion to dismiss, Mr. Niembro does not challenge the factual allegations raised in Driven's complaint, but will contest the allegations if the complaint is not dismissed.

2

million." *Id.* ¶ 60. Further, Driven alleges that "[o]n April 28, 2023, without prior authorization from OCIF" and knowing that Nodus Bank was going into liquidation imminently, Mr. Niembro "caused Nodus [Bank] to sign an agreement with Nodus Finance by which Nodus [Bank] purchased a mortgage loan portfolio from Nodus Finance that was purportedly worth $26,011,780.08." *Id.* ¶ 63. Driven contends that, although the April 28, 2023, agreement "stated that Nodus [Bank] would pay $26,011,780.08 to Nodus Finance, Nodus [Bank's] financial statements reflect that it accepted Nodus Finance's loan portfolio as partial payment of the latter's debt to Nodus arising from the 47 promissory notes acquired between 2019 and 2021. *Id.* ¶ 65. This, according to Driven, caused Nodus Bank's "promissory notes assets to decrease by $25,738,875.65 while freeing Nodus Finance and Mr. Niembro from a liquid debt to Nodus Bank. *Id.* ¶ 66. Driven alleges that Mr. Niembro took these actions "to the detriment of Nodus's depositors." *Id.*

Driven brings eight claims against Mr. Niembro for breach of the fiduciary duty of loyalty, conspiracy to breach the fiduciary duty of loyalty, constructive fraud, and conversion related to the two alleged schemes.[2] In each of these claims, Driven alleges that it is seeking to recover for harm purportedly committed to the depositors, not to Nodus Bank. In its breach of

---

[2] In a single sentence in the complaint, Driven states that it "seeks a writ of attachment against [the Niembros'] Property to secure a judgment against Defendants, as it is believed that Defendants have removed other proceeds of their fraudulent schemes from Florida." D.E. 1 ¶ 22. It is not clear what defendants Driven is referring to, and there are no other allegations of who allegedly removed proceeds from Florida or when. But, in any case, Driven's "request" for a writ of attachment is improper in an action for money damages such as this one. *Id.* at 15-20. Under Florida law, "in an action at law for money damages, there is simply no judicial authority for an order requiring the deposit of the amount in controversy into the registry of the court . . . or indeed for any restraint upon the use of a defendant's unrestricted assets prior to the entry of judgment." *CMR Distributors, Inc. v. Resolution Tr. Corp.*, 593 So. 2d 593, 594 (Fla. 3d DCA 1992) (reversing trial court's denial of motion to dismiss because the trial court's order "effectively restrain[ed], prior to the entry of judgment, the funds of the guarantors." (citing *Konover Realty Assoc. v. Mladen*, 511 So. 2d 705, 706 (Fla. 3d DCA 1987))).

3

fiduciary duty counts, Driven alleges that Mr. Niembro owed a fiduciary duty of loyalty to Nodus's depositors, breached that duty, and Nodus Bank's depositors have been injured. *See* D.E. 1 at ¶¶ 70-72, 83-85. In its conspiracy counts, Driven alleges that Mr. Niembro and the other defendants knew of Mr. Niembro's fiduciary duty to Nodus Bank's depositors but conspired to breach that duty, causing injury to Nodus Bank's depositors. *Id.* ¶¶ 78-81, 91-94. In its constructive fraud claims, Driven alleges that as a fiduciary of Nodus Bank's depositors, Mr. Niembro was "in a relationship of trust or confidence to those depositors" and "abused [his] position of trust and confidence by engaging in self-dealing, fraud, and conflict of interest transactions" causing injury to Nodus Bank's depositors. *Id.* ¶¶ 74-76; 87-89. Finally, in its conversion claim, Driven alleges that "Nodus [Bank's] depositors had a right to possess the funds that they had on deposit with Nodus" and that Mr. Niembro "took or used those funds in a way that was inconsistent with the depositors' rights," causing injury to the depositors. *Id.* ¶¶ 96-98; 100-02.

## II.  LEGAL STANDARD

Mr. Niembro moves to dismiss Driven's complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) motion to dismiss tests the "facial sufficiency of a complaint." *Ghee v. Comcast Cable Commc'ns, LLC*, No. 22-12867, 2023 WL 3813503, at *2 (11th Cir. June 5, 2023), *cert. denied*, 144 S. Ct. 1008 (2024) (internal quotations and citation omitted). A "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that a pleading must provide "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation"). Driven must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547. Though the Court "must accept as

4

true any factual allegation within a complaint, [it is] not so bound with legal conclusions masked in a veneer of facts . . . . [A] complaint need not include 'detailed factual allegations' . . . [b]ut surviving a Rule 12(b)(6) motion requires 'more than an unadorned, the defendant unlawfully-harmed-me accusation.'" *Ghee*, 2023 WL 3813503, at *2 (citations omitted).

Mr. Niembro also moves to dismiss Driven's complaint pursuant to Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—"that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

### A. All Counts in Driven's Complaint Fail as A Matter of Law Because Driven Lacks Standing to Bring Claims on Behalf of Nodus Bank's Depositors

"[S]tanding is a threshold jurisdictional question . . . ." *Wiand v. ATC Brokers Ltd.*, 96 F.4th 1303, 1311 (11th Cir. 2024). Without standing, the Court is "not empowered to reach any merits question" and ordinarily "must dismiss the plaintiff's claim without prejudice." *Id.* (internal quotations and citations omitted).

In this action, Driven sues Mr. Niembro on behalf of Nodus Bank to recover purported damages owed to Nodus Bank's **depositors**. While Driven alleges in a single paragraph that it brings this "action to obtain remedies for the harm caused to Nodus and its depositors," D.E. 1 ¶ 8, in fact, Driven brings claims *only* on behalf of the depositors, not Nodus Bank. This is confirmed by all eight counts in Driven's complaint, all of which depend on rights and duties Mr.

Niembro allegedly owed only to the depositors, not to Nodus Bank.[3]

"It is axiomatic that a receiver obtains only the rights of action and remedies that were possessed by the person or corporation in receivership." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1306 (11th Cir. 2020) (citing *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 550 (Fla. 2d DCA 2003)).[4] "Although a receivership is typically created to protect the rights of creditors, the receiver is not the class representative for creditors and cannot pursue claims owned directly by the creditors . . . . Rather, he is limited to bringing only those actions previously owned by the party in receivership." *Id.* (citation omitted). This limitation on a receiver's right to bring claims on behalf of creditors makes sense because a bank's customers, like the depositors at Nodus Bank, are general, unsecured creditors. "When a customer deposits funds into his account, the relationship is that of the bank as a debtor and the customer as its creditor." *Carl v. Republic Sec. Bank*, 282 F. Supp. 2d 1358, 1365-66 (S.D. Fla. 2003) (internal citations omitted). No fiduciary relationship arises in the debtor-creditor relationship.

Driven lacks standing to sue on behalf of Nodus Bank's depositors. In *Freeman*, Lewis B. Freeman, as receiver for NorthAmerican, a corporation that "advertised itself as a 'bank alternative' where customers could deposit funds that would earn a twelve percent return," sued

---

[3] "Defendants Tomas Niembro . . . owed . . . a fiduciary duty of loyalty to **Nodus's depositors**." D.E. 1 ¶¶ 70, 83, 87 (emphasis added) (Counts I, IV, and V). "As fiduciar[y] of **Nodus's depositors**, Niembro [] w[as] in a relationship of trust or confidence to those **depositors**." *Id.* ¶ 74 (emphasis added) (Count II). "Niembro . . . entered into an agreement . . . to breach, or to assist in breaching, the fiduciary duty of loyalty owed to **Nodus's depositors** . . . .". *Id.* ¶¶ 79, 92 (emphasis added) (Counts III and VI). "**Nodus's depositors** had a right to possess the funds that they had on deposit with Nodus . . . . Niembro . . . took or used those funds in a way that was inconsistent with the **depositors' rights**." *Id.* ¶¶ 96-97, 100-01 (emphasis added) (Counts VII and VIII).

[4] Driven alleges its complaint arises under Florida law. *See, e.g.*, D.E. 1 ¶¶ 20-21. As such, Mr. Niembro brings this early motion to dismiss Driven's complaint under Florida law but reserves the right to challenge the applicable law of the case later.

6

defendants for their business connections with NorthAmerican and aimed to hold the defendants liable for "the economic losses the corporation or its customers suffered" because of the alleged Ponzi scheme. *Freeman*, 865 So. 2d at 545. Florida's Second District Court of Appeal affirmed the trial court's dismissal of the receiver's claims on behalf of NorthAmerican's customers, stating that:

> [T]o the extent that count I discusses [defendants'] aiding and abetting a fraud by NorthAmerican . . . upon its customers and to the extent that count V discusses their engaging in a conspiracy to commit or to aid and abet fraudulent transfers to the detriment of the customers, . . . **such causes of action are possessed by the individual customers and are not matters that could possibly have been assigned to Mr. Freeman by NorthAmerican in this receivership**. The customers were not parties to the receivership and have not assigned their claims to Mr. Freeman. Thus, he has no "standing" to bring these claims because he does not possess them.

*Id.* at 553 (emphasis added). The same is true in this case. Driven's eight claims against Mr. Niembro are claims possessed, if at all, by Nodus Bank's depositors.[5] Driven lacks standing to bring these claims.

Accordingly, the Court should dismiss Counts I through VIII of Driven's complaint for lack of standing.

---

[5] Further highlighting the issues with Driven's complaint on behalf of Nodus Bank's depositors, Driven's complaint does not identify what depositors purportedly were affected by the acts alleged, what their specific losses are, or what depositors would be bound by a judgment in this case. *See generally Feltman v. Prudential Bache Sec.*, 122 B.R. 466, 471 (S.D. Fla. 1990) (barring bankruptcy trustee's claims on behalf of debtor's creditors and citing to concern that "allowing the trustee to sue on behalf of the debenture holders would complicate litigation: a suit by the trustee might be inconsistent with independent actions brought by the creditors themselves, and it would be unclear which creditors would be bound by a judgment." (citing *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972))).

**B. Driven's Breach of Fiduciary Duty Claims (Counts I and IV) Fail Because Mr. Niembro Does Not Owe a Fiduciary Duty to Nodus Bank's Depositors and, Even if a Duty Could Exist, Driven Has Not Alleged It**

1. *No Fiduciary Duty to Depositors*

In Counts I and IV of its complaint, Driven alleges that "Tomas Niembro and Juan Ramirez owed, as officers and directors of Nodus, a fiduciary duty of loyalty to Nodus's depositors." D.E. 1 ¶¶ 70, 83. Even if Driven had standing to pursue claims on behalf of Nodus Bank's depositors, its breach of fiduciary claims fail because Mr. Niembro's role as president and owner of Nodus Bank does not give rise to a fiduciary duty to the bank's depositors. In Florida, "[t]he general rule is that the relationship between a bank and its borrower is that of a creditor-debtor and that a bank owes the borrower no fiduciary duty." *Suzmar, LLC v. First Nat'l Bank of S. Miami*, 388 So. 3d 852, 855 (Fla. 3d DCA 2023), *reh'g denied* (Oct. 4, 2023) (quoting *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330 (S.D. Fla. 2011), *aff'd*, 483 Fed. Appx. 568 (11th Cir. 2012)) (affirming dismissal of breach of fiduciary duty count). The same is true under Puerto Rican law. *See F.C. Imps., Inc. v. First Nat'l Bank of Bos., N.A.*, 816 F. Supp. 78, 94 (D.P.R. 1993) ("[N]o fiduciary relationship exists between a bank and its depositors or loan customers."), *abrogated on other grounds by Portugues-Santana v. Rekomdiv Int'l*, 657 F.3d 56 (1st Cir. 2011).

If no fiduciary duty exists between a bank and its depositors, then it certainly cannot exist between Mr. Niembro, as president of Nodus Bank, and its depositors.

2. *No Allegations Giving Rise to a Breach of Fiduciary Duty Claim*

Under Florida law, "a fiduciary relationship exists where confidence is reposed by one party and a trust accepted by the other." *Silver*, 760 F. Supp. 2d at 1338 (citing *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002)). "[O]ne may not unilaterally impose a fiduciary responsibility

8

on another simply by reposing trust; absent some conscious acceptance of such duties, no fiduciary relationship is created." *Id.* Driven's complaint is devoid of allegations indicating that Mr. Niembro reposed any confidence in Nodus Bank's depositors or that those depositors accepted such trust. *See, e.g.*, D.E. ¶¶ 71, 84.

Further, "'[t]o establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party.'" *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 540-41 (Fla. 5th DCA 2003) (quoting *Watkins v. NCNB Nat'l Bank of Fla., N.A.*, 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993), *review denied*, *541 634 So. 2d 629 (Fla. 1994)). Other than to use the word "duty" throughout its complaint, Driven does not endeavor to allege what duties Mr. Niembro owed to Nodus Bank's depositors, how those duties arose, what acts Mr. Niembro took to advise, counsel, or protect the depositors, or how the depositors depended on Mr. Niembro's undertakings. This is fatal to Driven's breach of fiduciary claims because those claims expressly arise from the purported duty to the depositors. D.E. 1 ¶ 70 ("Defendants Tomas Niembro and Juan Ramirez owed, as officers and directors of Nodus, a fiduciary duty of loyalty to Nodus's depositors."); *id.* ¶ 83 (same).

Accordingly, the Court should dismiss Counts I and IV of Driven's complaint against Mr. Niembro for failure to state a claim.

### C. Driven's Conspiracy to Breach Fiduciary Duty Claims (Counts III and VI) Fail Because Driven Failed to Allege an Underlying Tort, and the Conspiracy Lacks Allegations of Agreement

#### 1. *No Underlying Tort*

Driven alleges that Mr. Niembro, along with the other defendants, "entered into an agreement, among themselves and with non-party Our Microlending, to breach, or to assist in

breaching, the fiduciary duty of loyalty owed to Nodus's depositors by Tomas Niembro and Juan Ramirez." D.E. 1 ¶¶ 79, 92. "[C]onspiracy is not a freestanding tort, but, rather, a cause of action for civil conspiracy exists only if the basis for the conspiracy is an independent wrong or tort which would constitute a cause of action if the wrong were done by one person." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 764 F.3d 1327, 1339 (11th Cir. 2014) (cleaned up); *see also Carney v. IDI-DX, Inc.*, No. 2:12-CV-00449-FTM-29, 2013 WL 4080326, at *2-3 (M.D. Fla. Aug. 13, 2013) (dismissing conspiracy count where "the basis for the conspiracy is [a] breach of fiduciary duty" but "plaintiff fails to sufficiently plead that [defendant] owed and breached a fiduciary duty").

As discussed above, Driven's breach of fiduciary claims fail because (1) Driven lacks standing to bring those claims, and (2) Mr. Niembro did not owe a fiduciary duty to Nodus Bank's depositors or reposed any confidence in them which the depositors accepted. Absent the underlying tort, Driven's conspiracy claims cannot stand. *See Gateway Invs., LLC v. Innovest Cappital, Inc.*, 402 F. App'x 459, 461 (11th Cir. 2010) ("Plaintiff claimed that the several defendants conspired to breach a fiduciary duty. Because the underlying breach of fiduciary duty claims are non-actionable, there can be no conspiracy with respect thereto.").

2. *No Agreement*

An agreement between two or more parties "is the gist of a conspiracy." *Russo v. Fink*, 87 So. 3d 815, 819 (Fla. 4th DCA 2012). In Count III, Driven alleges that "Tomas and Morella Niembro . . . entered into an agreement, among themselves and with non-party Our Microlending, to breach, or to assist in breaching, the fiduciary duty of loyalty owed to Nodus's depositors by Tomas Niembro and Juan Ramirez." D.E. 1 ¶ 79. However, the purported "entered into agreement" is never alleged in Driven's complaint. The only allegation in Driven's

10

complaint that comes close to showing a purported agreement concerns an alleged agreement between Mr. Niembro and Our Microlending LLC, which is not a party to this action. *See* D.E. 1 ¶¶ 5, 26. Driven does not allege there is any agreement between Mr. Niembro and his wife, Morella Niembro. For this reason, Count III fails. *Russo*, 87 So. 3d at 819 ("[T[he complaint does not allege an agreement between Leonard and Marilyn, which is the gist of a conspiracy, merely that Marilyn had knowledge of what Leonard was doing. Because it never alleged that there was an agreement, it has failed to allege sufficient facts with respect to the conspiracy count.").

Accordingly, the Court should dismiss Counts III and VI of Driven's complaint against Mr. Niembro for failure to state a claim.

### D. Driven's Constructive Fraud Claims (Counts II and V) Fail Because Driven Has Failed to Allege a Fiduciary Relationship Necessary to Maintain Its Constructive Fraud Claim

"Under Florida law, 'constructive fraud occurs when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken.'" *Rutstein v. Viva 5 Grp., LLC*, No. 8:24-CV-02417-WFJ-AAS, 2025 WL 500559, at *3 (M.D. Fla. Feb. 14, 2025) (quoting *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005)). "Constructive fraud will not lie where the parties are dealing at arms length [*sic*] because there is no duty imposed on either party to protect or benefit the other." *Am. Honda Motor Co.*, 390 F. Supp. 2d at 1179; *see also Maxwell v. First United Bank*, 782 So. 2d 931, 934 (Fla. 4th DCA 2001) (finding at arm's length relationship between bank and depositor).

As detailed above, Mr. Niembro was not in a fiduciary relationship with Nodus Bank's depositors because no such relationship exists between a bank and its depositors. Further, even if a fiduciary relationship could exist between Mr. Niembro and Nodus Bank's depositors, Driven

lacks standing to bring such claims. Lastly, Driven has not alleged a breach of fiduciary claim because it has not alleged any facts indicating acts by Mr. Niembro to advise, counsel, or protect the depositors, or any facts that the depositors accepted Mr. Niembro's undertakings and depended on them. Because Driven's fraud claims expressly arise from the purported relationship between Mr. Niembro and Nodus Bank's depositors, which is not confidential or fiduciary in nature, the fraud claims fail. *See* D.E. 1 ¶ 74 ("As fiduciaries of Nodus's depositors, Niembro and Ramirez were in a relationship of trust or confidence to those depositors . . . . Niembro and Ramirez abused their position of trust and confidence by engaging in self-dealing, fraud, and conflict of interest transactions, prioritizing their personal interests over those of Nodus's depositors to those depositors' detriment . . . ."); *id.* ¶ 87 (same).

Accordingly, the Court should dismiss Counts II and V of Driven's complaint against Mr. Niembro for failure to state a claim.

E. **Driven's Conversion Claims (Counts VII and VIII) Fail Because the Alleged Converted Funds Are Not Identifiable, and Nodus Bank's Depositors Cannot Bring Claims for the Bank's General Deposits**

1. *Converted Funds Must Be Identifiable, Which the Banks' General Deposits Are Not*

Driven alleges that "Nodus's depositors had a right to possess the funds that they had on deposit with Nodus" and that Mr. Niembro "took or used those funds in a way that was inconsistent with the depositors' rights." D.E. 1 ¶¶ 96-97; *id.* ¶¶ 100-01 (same). Even if Driven had standing to bring this claim, Driven's conversion claims still fail as a matter of law.

"It is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) (holding that there could be no conversion where parties did not contemplate that funds would be held in separate account,

trust, or escrow). Conversion requires "an obligation to keep intact or deliver the specific money in question, so that such money can be identified." *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970) (holding that, where plaintiff sought damages to enforce an obligation to pay money, cause of action for conversion could not lie). Further, "a debt that can be discharged by the payment of money cannot be the subject of a conversion claim under Florida law. *Sinclair & Wilde, Ltd. v. TWA Int'l, Inc.*, No. 20-20304-CIV, 2020 WL 6135192, at *5 (S.D. Fla. Oct. 19, 2020) (quoting *Tikiz Franchising, LLC v. Piddington*, 17-CV-60552, 2017 WL 8780761, at *6 (S.D. Fla. Aug. 1, 2017)).

Driven has not alleged that Nodus Bank's depositor's funds are identifiable, or that any amounts purportedly due to the depositors cannot be discharged with a payment of money damages. This is fatal to Counts VII and VIII of Driven's complaint.

### 2. *No Entitlement to General Deposits at Nodus Bank*

Nodus Bank's depositors are general, unsecured creditors. "When a customer deposits funds into his account, the relationship is that of the bank as a debtor and the customer as its creditor." *Carl*, 282 F. Supp. 2d at 1365 (internal citations omitted). Generalized deposits into a bank account do not constitute funds "of the specific nature required to support a conversion claim." *Indus. Park Dev. Corp. v. Am. Exp. Bank, FSB*, 960 F. Supp. 2d 1363, 1366 (M.D. Fla. 2013).

"Generally, when funds are deposited with a bank, the bank takes title to the money and owes a debt to its customer, which corresponds to the amount of the deposit." *Carl*, 282 F. Supp. 2d at 1366. "The simple deposit of money, check or draft in a commercial bank on account of the depositor, without being complicated by any other transaction than that of depositing and withdrawing money, is a general deposit." *Id*. (internal citation omitted) "Deposits are presumed

to be 'general' unless they are proven to be 'special.'" *Id*. Here, Driven does not allege that the alleged deposits are special. Because "general deposits" cannot support a conversion claim, Counts VII and VIII fail.

Accordingly, the Court should dismiss Counts VII and VIII of Driven's complaint against Mr. Niembro for failure to state a claim.

### F. Driven's Complaint Is Due to Be Dismissed as An Impermissible Shotgun Pleading

Driven's complaint is an impermissible "shotgun pleading," in violation of Federal Rule of Civil Procedure 8 because it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" and contains "multiple counts, where each count adopts the allegations of the preceding counts." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015).

First, Driven incorporates preceding paragraphs of its complaint into each count against Mr. Niembro. *See* D.E. 1 at 14-20. This is a quintessential shotgun pleading. *See D.B.C. Corp. v. Nucita Venezolana, C.A.*, 464 F. Supp. 3d 1323, 1327 (S.D. Fla. 2020) ("Plaintiff adopts a number of allegations in each count . . . mere referencing of a multitude of allegations makes it difficult for the many Defendants (and Court) to ascertain what, exactly, their specific alleged misconduct entails.").

Second, Driven's shotgun pleading leaves impermissibly unclear who is alleged to have done what to whom. Driven uses a single paragraph in each count of the complaint to lump together the conduct of all defendants charged in that respective count with no specific allegations of what defendant undertook what conduct. *See, e.g.*, D.E. 1 ¶ 80 ("Tomas and Morella Niembro and Juan and Maria Ramirez each undertook one or more overt acts in furtherance of the conspiracy, as further alleged herein."); *id*. ¶ 97 ("Defendants Tomas and

14

Morella Niembro, Juan and Maria Ramirez, and Oceana Key Biscayne Corporation took or used those funds in a way that was inconsistent with the depositors' rights." This practice violates Rule 8 and fails to answer the most fundamental question of all: who is suing whom for what? *See, e.g.*, *Gazzola v. NCL (Bahamas) Ltd*., 2019 WL 3067506, at *2 (S.D. Fla. 2019) (stating that negligence complaint against multiple defendants was a "quintessential 'shotgun pleading'" because it lumped all defendants together and did not allege which of them was responsible for which acts or omissions, which did not "give fair notice of what one defendant allegedly failed to do as opposed to the other"); *Pierson v. Orlando Reg'l Healthcare Sys., Inc*., 619 F. Supp. 2d 1260, 1271-74 (M.D. Fla. 2009) (using a single defined term for all defendants to allege varied involvement in a complex peer-review process held improper), *aff'd*, 451 Fed. App'x. 862 (11th Cir. 2012) (per curiam); *Synergy Real Estate of SW Fla. v. Premier Prop. Mgmt. of SW Fla., LLC*, 2013 WL 5596795, at *2 (M.D. Fla. 2013) (same).

Accordingly, the Court should dismiss Driven's complaint as an impermissible shotgun pleading.

## IV. CONCLUSION

For the reasons discussed in this motion, Mr. Niembro respectfully requests that the Court dismiss Driven's complaint against him.

Dated: April 2, 2025                         Respectfully submitted,

**RIVERO MESTRE LLP**
*Counsel for Tomas Niembro Concha*
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: dtenjido@riveromestre.com

15

By: */s/: Andrés Rivero*

ANDRÉS RIVERO
Florida Bar No. 613819
DANIELA TENJIDO-ELJAIEK
Florida Bar No. 1031531

## CERTIFICATE OF SERVICE

I certify that on April 2, 2025, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document was served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/: Andrés Rivero*
ANDRÉS RIVERO