UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO. 1:25-cv-20550-PCH

DRIVEN, P.S.C., as the Liquidation Receiver
for NODUS INTERNATIONAL BANK, INC.,

    Plaintiff,

v.

TOMAS NIEMBRO CONCHA; MORELLA
RINCON DE NIEMBRO; JUAN FRANCISCO
RAMIREZ; MARIA GABRIELA VASQUEZ
DE RAMIREZ; NODUS FINANCE, LLC;
OCEANA KEY BISCAYNE CORPORATION;
and JOSE G. SUAREZ,

    Defendants.
_____/

**DEFENDANTS' JOINT MOTION TO STAY THIS CASE
PENDING RESOLUTION OF PARALLEL CRIMINAL ACTION
AGAINST TOMAS NIEMBRO CONCHA AND JUAN FRANCISCO RAMIREZ**

On February 6, 2025, Driven, P.S.C. filed this action against Tomas Niembro Concha, Juan Francisco Ramirez (collectively, "Shareholders"), and five other defendants, for their alleged involvement in a conspiracy to defraud Nodus Bank and its depositors through transactions with non-party Our Microlending LLC. D.E. 1 ¶¶ 4-8. On March 15, 2025, Mr. Niembro and Mr. Ramirez were arrested and charged with conspiracy to commit fraud in violation of 18 U.S.C. § 1349 and conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h) in connection with the exact allegations that give rise to this action.

Because of the significant factual overlap between this case and the pending criminal case, the Shareholders' strong interest in protecting their right against self-incrimination, the obstacles the remaining defendants will face in defending themselves in this action, and the minimal prejudice to Driven at this early stage of the litigation, defendants request that the Court

stay this action pending resolution of the criminal case.[1] In the alternative, defendants request the Court stay this action for 90 days.

## I. DISCUSSION

"District courts have broad discretion in deciding whether to stay proceedings, incidental to their powers to control and efficiently manage their dockets." *Young v. Miami-Dade Cnty.*, 217 F. Supp. 3d 1353, 1354 (S.D. Fla. 2016). "'A court must stay a civil proceeding pending resolution of a related criminal prosecution only when special circumstances so require in the interest of justice.'" *Gonzalez v. Israel*, No. 15-CIV-60060, 2015 WL 4164772, at *2 (S.D. Fla. July 9, 2015) (quoting *United States v. Lot 5, Fox Grove, Alachua County, Fla.*, 23 F.3d 359, 364 (11th Cir. 1994)) (cleaned up).

Courts in the Eleventh Circuit "must consider 'whether a defendant in both a civil and criminal matter is forced to choose between waiving his privilege against self-incrimination or losing the civil case in summary proceedings.'" *Id.* (quoting *Shell Oil Co. v. Altina Associates, Inc.*, 866 F. Supp. 536, 540 (M.D. Fla. 1994)). "Accordingly, the critical factors in this analysis are the degree and severity of overlap between the civil and criminal proceedings; whether the criminal charges are hypothetical or, by contrast, whether an indictment or its equivalent has been issued; and the specificity of the invocation of the Fifth Amendment privilege relative to the civil proceeding." *Gonzalez*, 2015 WL 4164772, at *3 (collecting cases). In assessing whether a stay is appropriate, the Court also must "weigh competing interests and maintain an even balance." *Prosper v. Martin*, 239 F. Supp. 3d 1347, 1349 (S.D. Fla. 2017) (internal quotations

---

[1] This motion is brought jointly on behalf of Tomas Niembro Concha, Morella Rincon De Niembro, Juan Francisco Ramirez, Maria Gabriela Vasquez De Ramirez, and Nodus Finance, LLC (collectively "defendants"). Defendant Jose G. Suarez takes no position on the relief requested in this motion. Defendant Oceana Key Biscayne Corporation has not yet appeared in this action.

2

and citation omitted).

Additionally, in granting a stay of a civil proceeding, courts also consider the prejudice to the remaining defendants and whether their ability to defend themselves will be hindered by a criminal proceeding against another defendant. *See Shofur v. Fitzpatrick*, 1:20-cv-01267-SCJ, 2020 WL 13327561, at *1 (N.D. Ga. Nov. 27, 2020) (granting stay to defendant Fitzpatrick, a defendant in a parallel criminal proceeding as well as to other defendants in the civil action "substantially intertwined" with Fitzpatrick because his "invocation of his Fifth Amendment rights may similarly hinder [the other defendants'] ability to defend this case"). To that end, the Court should consider the impact that the pending criminal proceedings will have on defendants other than the Shareholders, including their wives, whose alleged roles in the conspiracies are extremely limited.[2]

### A. There Is a Significant Degree of Overlap Between Driven's Claims Against the Shareholders in This Case and The Criminal Case Filed Against Them

The similarity between the issues raised in parallel civil and criminal actions "'is the most important threshold issue in determining whether to grant a stay.'" *Gonzalez*, 2015 WL 4164772, at *3 (quoting *Love v. City of Lanett*, No. 3:09-CV-622-MEF, 2009 WL 2525371, at *2 (M.D. Ala. Aug. 17, 2009)); *Doe 1 v. City of Demopolis*, No. CIV A 09-0329-WS-N, 2009 WL 2059311, at *3 (S.D. Ala. July 10, 2009) ("degree of overlap is 'the most important factor' because absent such overlap there would be no need for a stay") (citation omitted).

The degree and severity of the overlap between this and the criminal case cannot be

---

[2] Driven alleges only that Morella Rincon de Niembro and Maria Gabriela Vasquez de Ramirez executed promissory notes and borrowed money from Our Microlending LLC, in concert with the Shareholders. D.E. 1 ¶¶ 51-56. It would be highly prejudicial to compel Mrs. Niembro, Mrs. Ramirez, and the other non-Shareholder defendants to mount a defense to this civil action while the Shareholders cannot meaningfully participate because they invoke their Fifth Amendment rights.

overstated. Four of the eight counts and 18 out of the 26 paragraphs describing the alleged conduct in this case arise from the exact allegations that make up the criminal complaint against the Shareholders. In both cases, they are accused of being involved in an alleged conspiracy involving non-party co-conspirator Our Microlending LLC to defraud Nodus Bank. Driven brings claims for breach of fiduciary duty, constructive fraud, conspiracy, and conversion related to the alleged conspiracy. D.E. 1 at 14-19. Similarly, in the criminal case, the Shareholders were charged with conspiracy to commit wire fraud and launder monetary instruments related to the exact alleged transactions with Our Microlending LLC raised in this case. Ex. A at 2. [3] Some examples of the overlap between this case and the criminal case include the following:

| **Allegations in Driven's Complaint, D.E. 1** | **Allegations in Criminal Complaint, Ex. A** |
|---|---|
| "[O]n March 18, 2022, Niembro and Ramirez met with Our Microlending in Miami, Florida and all three agreed to a transaction totaling approximately $7 million, by which Our Microlending would issue investment certificates to Nodus while allowing Niembro and Ramirez to use the funds for their own personal benefit." D.E. 1 ¶ 46. | "On March 18, 2022, Niembro messaged [Our Microlending LLC] to arrange a call to discuss a couple of transactions through Our Microlending . . . . The transaction was outlined as follows: Niembro and Ramirez were to cause Nodus to place $7 million in Our Microlending in the form of investment certificates . . . and Our Microlending would lend a total of $6.2 million to Niembro and Ramirez . . . ." Ex. A ¶ 17. |
| "On April 11, 2022, Niembro and Ramirez, acting as directors of Nodus and with the other members of the Board, approved an investment of $7 million in certificates of investment, to be held by Our Microlending for 1 year and with an annual interest rate of 5.05%." ¶ 47. "Niembro and Ramirez caused Nodus to book the Investment Certificates as | "The four members of the Board approved the two investment certificates by unanimous resolution dated April 11, 2022, noting its terms (two 'CDs' for a total of $7 million at 5.05% with a maturity date of one year). But neither Niembro nor Ramirez informed the other Board members that the $7 million investment was actually intended to finance |

---

[3] The Court may take judicial notice of filings in the criminal proceeding against Mr. Ramirez and Mr. Niembro under Federal Rule of Evidence 201. *See Kerruish v. Essex Holdings, Inc.*, 777 Fed. Appx. 285, 293 (11th Cir. 2019) (stating that Under Rule 201, a court may take judicial notice of court records to "determin[e] what happened in the course of a proceeding—when a plaintiff filed a complaint, what claims were argued and adjudicated, and so on").

| | |
|---|---|
| assets of Nodus. However, the Investment Certificates in fact were a sham to conceal illegal personal loans to Niembro, Ramirez, and their wives . . . ." D.E. 1 ¶ 50. | personal loans to Niembro and Ramirez." Ex. A ¶ 22. |
| "The day after Our Microlending received the funds, Tomas and Morella Niembro 'borrowed' $3,685,760.00 from Our Microlending via a commercial promissory note. Tomas and Morella Niembro signed the promissory note on their own behalf and as officers of Oceana Key Biscayne Corp." D.E. 1 ¶ 51. "Juan Ramirez, his wife, Maria, and Our Microlending signed another commercial promissory note, this one in the amount of $2,714,240.00." D.E. 1 ¶ 55. | "Our Microlending issued a $3,685,760 loan to Oceana Key Biscayne Corp., a shell company owned by Niembro and his wife; and a second loan directly to Ramirez and his wife for $2, 714, 240." Ex. A ¶ 21. |
| "Mr. Niembro and Mr. Ramirez concealed the scheme by causing the 'investment certificates' from Our Microlending to appear on Nodus' books as assets. Meanwhile, the Niembro and Ramirez families used those loans for their own benefit. The result has been a net loss of approximately $2.7 million to Nodus depositors . . . ." D.E. 1 ¶ 5. | "To date, Niembro and Ramirez have partially repaid the loans that they received from Our Microlending. However, $2,338,909.10 remains outstanding for Ramirez's loan and $341,090.90 remains outstanding for Niembro's loan. As a consequence, Nodus has not been fully repaid by Our Microlending for the investment certificates, to the detriment of Nodus and its depositor [*sic*]." Ex. A ¶ 31. |

Where, as here, there is substantial overlap between the pending criminal and civil actions, courts in this Circuit favor a stay of the civil proceedings. In *Gonzalez*, the civil complaint against the defendant deputies alleged that the deputies "used excessive force" and "falsified police reports" during plaintiff's arrest. *Gonzalez*, 2015 WL 4164772, at *1 (S.D. Fla. July 9, 2015). The deputies were charged by information with felony battery and criminal misdemeanors for falsifying records. *Id.* The court stayed the civil proceeding against the deputies, noting that "[t]here is an overwhelming degree of overlap between Plaintiff's civil claims and the criminal informations filed against the Deputies. Both cases arise from identical circumstances. The Deputies have been charged criminally for the very acts Plaintiff here claims

5

give rise to civil liability." *Id.*; *see also Doe 1*, 2009 WL 2059311, at *3 ("Under the circumstances presented here, the Court agrees that a stay is appropriate. A central issue in both this action and the Marengo County proceedings will be whether Smith sexually assaulted Jane Doe 1; therefore, the similarity between the two actions is substantial."); *Lay v. Hixon*, No. CIVA 09-0075-WS-M, 2009 WL 1357384, at *3 (S.D. Ala. May 12, 2009) ("[A] stay of this action pending resolution of the state-court criminal proceedings is appropriate . . . . [T]he factual overlap between the two cases is considerable. By all appearances, the [][] criminal proceedings against Lay hinge on the factual question of whether he stole the barge . . . or whether he found it adrift and rescued it from marine peril . . . . That same question appears dispositive in this salvage action . . . . Clearly, then, the identity of key factual issues joined in the criminal prosecution and in these maritime proceedings counsels in favor of a stay.").

Accordingly, considering the substantial overlap between the allegations in this action and the criminal case against the Shareholders, this factor weighs heavily in favor of staying this case.

### B. The Criminal Charges Against the Shareholders are Not Merely Hypothetical

On March 15, 2025, the Shareholders were arrested and charged with conspiracy to commit fraud in violation of 18 U.S.C. § 1349 and conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h).[4] *See* Ex. A at 2. On March 17, 2025, the Shareholders had their first appearances. At that hearing, the court advised the Shareholders of their "rights and charges," and ordered the United States to disclose to them all exculpatory evidence as required

---

[4] The Shareholders were charged by criminal complaint. A criminal complaint "is a written statement of the essential facts constituting the offense charged. Except as provided in Rule 4.1, it must be made under oath before a magistrate judge or, if none is reasonably available, before a state or local judicial officer." Fed. R. Crim. P. 3.

6

by *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. *See* Ex. B; Ex. C at D.E. 8. And, on information and belief, a grand jury investigation is underway.

The court also granted Mr. Niembro's bond request and set a $20 million preferred surety bond collateralized by two properties and a $2 million cash bond requiring a 10% payment into the court's registry. *See* Ex. B. Mr. Niembro's bond conditions include surrendering his travel documents, home confinement, and GPS ankle monitoring. *Id*. Similarly, the court granted Mr. Ramirez's bond request and set a $2 million preferred surety bond and a $1 million cash bond requiring a 10% payment into the court's registry. *See* Ex. C; Ex. D. Mr. Ramirez's bond conditions include surrendering his travel documents, GPS ankle monitoring, and an 8:00 p.m. to 7:00 a.m. curfew. *See* Ex. D.

The Shareholders were scheduled to appear for their arraignments and preliminary hearings on April 7, 2025. On March 28, 2025, the United States and the Shareholders moved jointly to continue the arraignment and hearing to June 6, 2025, "due to the factual complexity of the case, the need for time for counsel for the defendants to review materials with the defendants, the need for time for effective preparation taking into account the exercise of due diligence, and the desire of the parties to discuss a possible resolution of the case, all of which are in the interests of justice and outweigh the best interests of the public and the defendants in a speedy trial." *See* Ex. E at 2. On April 2, 2025, the criminal court granted the joint motion, finding that "the ends of justice served by this delay outweigh the interests of the Defendants and of the public in a speedy trial . . . ." Ex. F.

In sum, the Shareholders have been arrested, criminally charged, brought before the criminal court to be advised of their charges, and their freedom restrained. Further, the criminal action against the Shareholders, which by the government's own statement is "factually

complex," remains ongoing. Without a doubt, the Shareholders' criminal charges are not merely hypothetical. *See Gonzalez*, 2015 WL 4164772, at *3 ("The Deputies have been charged criminally for the very acts Plaintiff here claims give rise to civil liability. Their exposure to criminal penalty is not merely hypothetical.").

Accordingly, considering the charges against the Shareholders are not merely hypothetical, this factor weighs in favor of staying this proceeding.

### C. The Shareholders' Fifth Amendment Rights Against Self-Incrimination Prevent Them from Effectively Defending Themselves in This Action and Substantially Limit the Other Defendants' Ability to Do the Same

As demonstrated above, the allegations in this and the criminal case overlap substantially. Whether the Shareholders conspired to defraud Nodus Bank through the alleged scheme involving Our Microlending LLC is central to both actions. The Shareholders will invoke their Fifth Amendment rights against self-incrimination at every stage of this case, including throughout discovery and at trial, about the very facts that are critical to the majority of Driven's claims in this case.

For instance, Driven alleges in its complaint that the Shareholders used Nodus Bank's funds to obtain personal loans through Our Microlending LLC for themselves and their wives. D.E. 1 ¶ 50 ("Niembro and Ramirez caused Nodus to book the Investment Certificates as assets of Nodus. However, the Investment Certificates in fact were a sham to conceal illegal personal loans to Niembro, Ramirez, and their wives, using depositor funds as collateral . . . ."). In the criminal case, the Shareholders are charged with the same conduct. *See* Ex. A ¶ 22 ("[N]either Niembro nor Ramirez informed the other Board members that the $7 million investment was actually intended to finance personal loans to Niembro and Ramirez . . . .").

The Shareholders will also be unable to defend themselves with the discovery or testimony of others in this action. First, the Shareholders are not allowed to have any contact

with each other while the criminal case is pending. *See* Ex. B. Their coordination in this case regarding joint allegations against them would be impossible. Second, Morella Rincon de Niembro and Maria Gabriela Vasquez de Ramirez, the Shareholders' wives, are also named defendants in this case. Mrs. Niembro and Mrs. Ramirez are likely to invoke spousal privilege and cannot be compelled to testify against the Shareholders.[5] And, because Driven's claims against the wives wholly depend on the claims against the Shareholders, the Shareholders' invocation of their Fifth Amendment rights will make it difficult for the wives to meaningfully defend themselves. For instance, Driven alleges that the Our Microlending Scheme culminated in the wives, in concert with the Shareholders, knowingly borrowing depositor funds from Our Microlending LLC for their personal use. D.E. 1 ¶¶ 51-56. Defending against this allegation depends on the Shareholders' discovery about their alleged individual dealings with Our Microlending LLC. If and when the Shareholders invoke their Fifth Amendment rights, the wives' access to this information will be significantly limited. *See Shofur*, 2020 WL 13327561, at *1 (granting stay to defendant Fitzpatrick, a defendant in a parallel criminal proceeding as well as to other defendants in the civil action "substantially intertwined" with Fitzpatrick because his "invocation of his Fifth Amendment rights may similarly hinder [the other defendants'] ability to defend this case"). Third, the two entity defendants in this action are owned by Mr. Niembro. The entity defendants' discovery in this case, and their ability to defend themselves, will also be affected by their agent Mr. Niembro's invocation of his Fifth Amendment privilege. *See id.*

---

[5] "[A] state's evidentiary privilege applies in diversity cases." *Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A.*, 519 F. Supp. 3d 1184, 1196 (S.D. Fla. 2021) (citation omitted). Under Florida law, "(1) A spouse has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from disclosing, communications which were intended to be made in confidence between the spouses while they were husband and wife. (2) The privilege may be claimed by either spouse or by the guardian or conservator of a spouse." *See* Fla. Stat. § 90.504 (1)-(2).

9

Fourth, the criminal complaint cites several statements by defendant Jose G. Suarez that are adverse to the Shareholders and would likely prevent the sharing of information and discovery between Mr. Suarez and the Shareholders in this action. *See, e.g.*, Ex. A ¶¶ 6, 12, 14, 23. Lastly, Driven's decision not to name Our Microlending LLC (a "non-party co-conspirator," according to the complaint) in this action, although a substantial number of the allegations in this case include that entity, make it more difficult for the Shareholders to obtain discovery from that entity to defend against Driven's claims in this case.

In sum, the Shareholders will be forced to choose between defending themselves and their families in this action or risking exposure to criminal liability by waiving their Fifth Amendment rights. This impossible choice warrants a stay of this case. *See Gonzalez*, 2015 WL 4164772, at *3 ("The Deputies will invoke their Fifth Amendment rights against self-incrimination when questioned, in discovery and at trial, precisely about the facts critical to nearly all if not all of the claims asserted by Plaintiff here . . . . The Deputies will be forced to choose whether to defend themselves in this civil action or risk exposure to criminal sanction . . . . By all accounts . . . the Deputies face all but certain loss of the instant civil proceeding absent the requested stay."); *Lay*, 2009 WL 1357384, at *4 (granting stay of proceedings where although not all criminal defendants were parties to the civil suit, criminal defendants would be witnesses in civil case and "will invoke their Fifth Amendment privilege, thereby delaying and encumbering discovery []. By waiting until the criminal proceedings are concluded before moving forward with discovery, the timely and full participation of [the non-parties] in depositions can be secured with greater ease and without the risk of incriminating them."); *Shofur*, 2020 WL 13327561, at *1.

    **D.  Driven Will Not Be Prejudiced by a Stay of this Case at This Early Stage**

A stay at this early stage of the case would not prejudice Driven. Discovery has not

begun, and no substantial court deadlines have been set. Under these circumstances, courts favor staying civil proceedings. *See, e.g.*, *Prosper*, 239 F. Supp. 3d at 1349-50 (staying civil case and finding that "Plaintiff is not prejudiced by the timing of Defendant's Motion, which is presented at the earliest stage following service of the Complaint. Courts denying stays have sometimes cited the fact movants waited until after discovery was completed or waited until after it had been ongoing for several months . . . . No discovery will be abandoned here, and no court deadlines postponed."); *Young*, 217 F. Supp. 3d at 1355-56 (staying civil case and finding that plaintiff "is not prejudiced by the timing of the County's Motion, which has come at the earliest stage . . . . In contrast, no discovery would be abandoned here and no court deadlines postponed. Granting the stay now ensures the starting pistol is fired when appropriate, rather than stopping the case mid-race.").

Moreover, Driven has been appointed as the receiver for Nodus Bank by the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico ("OCIF"), which is a governmental agency that regulates financial institutions that operate in Puerto Rico. D.E. 1 ¶¶ 7, 28-37. Driven will not be prejudiced if this case is stayed because it, along with the OCIF, is presumably coordinating and cooperating with the United States in the criminal action and has a vested interest in that case proceeding.

Finally, judicial economy also favors a stay of this case, as findings in the criminal case may have preclusive effects here. *See Doe 1*, 2009 WL 2059311, at *3 (finding that judicial economy was an additional consideration favoring a stay). The criminal court continued the preliminary hearing and arraignment in that case for 60 days, finding that doing so was in the interest of justice. *See* Ex. F. It also would serve the interests of justice and judicial economy in this case to follow suit and stay this action while the Government and the Shareholders "discuss

11

a potential resolution of the case" in the criminal action. *See* Ex. E. Furthermore, a stay would avoid potentially conflicting findings in both cases.

## II.  CONCLUSION

For the reasons stated above, the defendants respectfully request the Court stay this action until the criminal case against them is resolved. In the alternative, the defendants request the Court stay this action for 90 days.

## **CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(2), I certify that counsel for the movants have conferred with all parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues. Defendant Jose G. Suarez takes no position on the relief requested in this motion. All remaining defendants that have appeared in this action consent to the requested relief. Counsel for the movants have been unable to resolve the issues with Driven.

/s/ *Andrés Rivero*
Andrés Rivero

Dated: April 4, 2025

Respectfully submitted,

**RIVERO MESTRE LLP**
*Counsel for Tomas Niembro Concha, Morella Rincon de Niembro, and Nodus Finance, LLC*
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: dtenjido@riveromestre.com

By: */s/ Andrés Rivero*
ANDRÉS RIVERO
Florida Bar No. 613819
DANIELA TENJIDO-ELJAIEK
Florida Bar No. 1031531

        **MARKOWITZ, RINGEL, TRUSTY & HARTOG, P.A.**
*Co-Counsel for Defendant Juan Francisco Ramirez*
9130 South Dadeland Boulevard, Suite 1800
Miami, Florida 33156
Tel.: 305-670-5000
Fax: 305-670-5011

By: /s/ *Adrian C. Delancy*                .
    ADRIAN C. DELANCY
    Fla Bar No.: 75337
    adelancy@mrthlaw.com

**ESTRELLA, LLC**
*Co-Counsel for Defendant Juan Francisco Ramirez*
150 Tetuan Street
San Juan, PR 00901
Tel.: 787-977-5050
Fax: 787-977-5090

Carlos A. Infante, Esq.
Stephanie M. Vilella Alonso, Esq.
cinfante@estrellallc.com
svilella@estrellallc.com

(admitted pro hac vice)

**KHL LAW**
*Counsel for Maria Gabriela Vasquez de Ramirez*
Alfred I. duPont Building
169 E. Flagler Street, Suite 500
Miami, Florida 33131
Telephone: (305) 854-9700
Facsimile: (305) 854-0508
Email Address: cal@khllaw.com
                jbr@khllaw.com

By: */s/ John B. Rosenquest IV*         
Cary A. Lubetsky
Florida Bar No. 961360
John B. Rosenquest IV
Florida Bar No. 48431

## CERTIFICATE OF SERVICE

    I certify that on April 4, 2025, I electronically filed this document with the Clerk of the

Court using CM/ECF. I also certify that this document was served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *Andrés Rivero*
Andrés Rivero